# UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF PENNSYLVANIA

ANDREW OSTROWSKI,

     Plaintiff,

     v.

FRANK D'ANDREA, et al.,

     Defendants.

CIVIL ACTION NO. 3:14-cv-00429

(CAPUTO, J.)
(SAPORITO, M.J.)

## <u>REPORT AND RECOMMENDATION</u>

This is a federal civil rights action, brought pursuant to 42 U.S.C. § 1983. In March 2014, plaintiff Andrew Ostrowski was a congressional candidate, seeking to represent Pennsylvania's Eleventh Congressional District in the United States House of Representatives. He has alleged that an unidentified Hazleton police officer unlawfully seized three pages of nominating petitions containing 67 signatures from an unspecified campaign volunteer in an effort to frustrate Ostrowski's attempt to get on the election ballot. He has sued the unidentified officer as a "John Doe" defendant. Ostrowski has alleged that, after he initiated this civil rights action against Officer Doe, defendant Frank DeAndrea,[1] the Hazleton

---

[1] Defendant DeAndrea's name was misspelled in the caption of the
*(continued on next page)*

Chief of Police, retaliated against him by convening a press conference to discuss the lawsuit, at which he accused Ostrowski of "fabricat[ing] the entire event for political purposes." (Doc. 28, at 10). He has also alleged, on information and belief, that defendant DeAndrea "was, or may be, the Officer Doe who seized the petitions." (*Id.* at 6). Ostrowski has further alleged that a newly added defendant, Joseph Yanuzzi, the Mayor of Hazelton at the time, supported and conspired with DeAndrea in this allegedly wrongful conduct, and that their mutual employer, the City of Hazleton, is vicariously liable for any damages inflicted by DeAndrea's and Yanuzzi's conduct. (*Id.* at 8–12, 15).

Ostrowski has asserted federal civil rights claims against these defendants pursuant to 42 U.S.C. § 1983, claiming that their conduct violated Ostrowski's rights under the First, Fourth, and Fourteenth Amendments to the United States Constitution. He has also asserted, in passing, that the defendants' conduct violated the Hatch Act, 5 U.S.C. § 1501 *et seq.*, which prohibits employees of state and local government agencies receiving federal funds from engaging in partisan political

---

original and first amended complaints. Ostrowski has corrected the spelling in his second amended complaint.

activity. Ostrowski has further asserted a supplemental a state-law defamation claim based on DeAndrea's statements at the press conference.

The defendants have moved to dismiss the action against them for failure to state a claim under Rule 12(b)(6) of the Federal Rules of Civil Procedure. Ostrowski has failed to file a brief in opposition to the motion to dismiss. Thus, the motion is ripe for decision on the defendants' motion and supporting brief alone.

## I.  BACKGROUND

According to the second amended complaint, in March 2014, plaintiff Ostrowski was a congressional candidate, engaged in an effort to secure the requisite number of nominating petition signatures to appear on an upcoming election ballot. On March 4, 2014, an unspecified campaign volunteer, identified as "Jane Doe" in the second amended complaint, was gathering petition signatures on Alter Street in the City of Hazleton when she was detained and searched by an unknown Hazleton police officer. The officer, identified as "Officer Doe" in the second amended complaint, allegedly told Jane Doe that she was required by city ordinance to have a

permit to circulate nomination petitions on the streets of Hazleton.[2] The officer released Jane Doe and kept the nominating petitions she had been circulating, which included three sheets containing a total of 67 signatures in support of Ostrowski's placement on the election ballot.

Appearing through counsel, Ostrowski initiated this federal civil rights action by filing his original complaint on March 7, 2014. (Doc. 1). The original complaint asserted claims against Officer Doe only.

On March 10, 2014, Ostrowski allegedly attempted three times to reach Hazleton Police Chief DeAndrea by telephone to request the return of the confiscated nominating petitions. Unable to reach DeAndrea, Ostrowski allegedly sent him an email message that same day, but received no response. On March 10 and 11, 2014, Ostrowski filed his nominating papers, which met the numerical requirement for signatures, despite the loss of the confiscated nominating petitions with 67 signatures. On March 17, 2014, DeAndrea allegedly held a press conference, at which he publicly responded to the allegations of the original complaint and "made accusations that [Ostrowski] fabricated the entire event for political purposes." (Doc. 28, at 10).

---

[2] Ostrowski alleges that there is no such ordinance.

On July 7, 2014, Ostrowski filed his amended complaint in this action, once again appearing through counsel. (Doc. 4). In his amended complaint, Ostrowski claimed that DeAndrea's statements at the press conference were false and defamatory, that they were made in retaliation for the filing of the original complaint in this litigation, and that they were intended to interfere with Ostrowski's right to run for elected office. Ostrowski further claimed that DeAndrea was a conspirator in the alleged unlawful detention of the campaign volunteer and confiscation of the nominating petitions. Ostrowski claimed that these acts violated his First, Fourth, and Fourteenth Amendment rights.

Subsequent to the amended complaint, Ostrowski's counsel of record was suspended from practice in this Court. *See In re Bailey*, No. 3:14-mc-0608 (M.D. Pa. Oct. 17, 2014). Ostrowski—himself a suspended attorney—opted to proceed *pro se* thereafter. *See generally In re Ostrowski*, No. 1:10-mc-0064, 2014 WL 690528 (M.D. Pa. Feb. 24, 2014), *reconsideration denied*, 2014 WL 1745866 (M.D. Pa. May 1, 2014), *appeal dismissed*, No. 14-2897 (3d Cir. Jan. 6, 2015).

On March 7, 2016, on the motion of defendant DeAndrea (Doc. 8), the Court adopted a report and recommendation by the undersigned (Doc. 16)

dismissed Ostrowski's § 1983 claims against defendant DeAndrea for failure to state a claim upon which relief can be granted, and declined to exercise jurisdiction over Ostrowski's state-law defamation claim. (Doc. 20; Doc. 21). The Court further granted Ostrowski leave to file an amended complaint within thirty days. (Doc. 20; Doc. 21).

Ostrowski appealed the dismissal of his claims to the Third Circuit. (Doc. 23). Following the dismissal of that appeal (*see* Doc. 26), Ostrowski filed his second amended complaint on January 30, 2017. (Doc. 28).

The second complaint added two new defendants: (a) Joseph Yannuzi, the incumbent mayor of Hazleton at the time of the press conference and the alleged seizure of nominating petitions; and (b) the City of Hazleton. The second amended complaint alleged that Yannuzi attended the press conference and made unspecified comments supportive of DeAndrea and critical of Ostrowski. It further alleged that Yannuzi and DeAndrea had previously discussed and coordinated their positions with respect to Ostrowski's accusation regarding the alleged seizure of nominating petitions; Ostrowski based this particular allegation on "the logical impossibility of it not happening," rather than any actual knowledge of facts. (*Id.* at 11). Ostrowski also sought an award of damages

against the City of Hazleton based on an allegation that all of the allegedly wrongful conduct was "undertaken pursuant to, in furtherance of, and/or were otherwise guided by the unlawful custom, policy, pattern, and practice of the City of Hazleton with regard to the quelling of political dissent, and treatment of matters regarding minorities, and the minority community." (*Id.* at 15). Ostrowski alleged no further details with respect to this purported municipal policy. (*See id.*).

The second amended complaint also newly alleged, on information and belief, that defendant DeAndrea "was, or may be, the Officer Doe who seized the petitions." (*Id.* at 6).

On February 15, 2017, the defendants moved to dismiss this action for failure to state a claim. (Doc. 30). On March 1, 2017, the defendants filed a brief in support of their motion to dismiss. (Doc. 32). Despite an order *sua sponte* granting him a second chance to do so, Ostrowski has failed to file a brief in response to the motion—thus it appears he has opted to stand on the pleadings.

## II.   RULE 12(B)(6) STANDARD

Rule 12(b)(6) of the Federal Rules of Civil Procedure authorizes a defendant to move to dismiss for "failure to state a claim upon which relief

can be granted." Fed. R. Civ. P. 12(b)(6). "Under Rule 12(b)(6), a motion to dismiss may be granted only if, accepting all well-pleaded allegations in the complaint as true and viewing them in the light most favorable to the plaintiff, a court finds the plaintiff's claims lack facial plausibility." *Warren Gen. Hosp. v. Amgen Inc.*, 643 F.3d 77, 84 (3d Cir. 2011) (citing *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555–56 (2007)). Although the Court must accept the fact allegations in the complaint as true, it is not compelled to accept "unsupported conclusions and unwarranted inferences, or a legal conclusion couched as a factual allegation." *Morrow v. Balaski*, 719 F.3d 160, 165 (3d Cir. 2013) (quoting *Baraka v. McGreevey*, 481 F.3d 187, 195 (3d Cir. 2007)).

Under Rule 12(b)(6), the defendant has the burden of showing that no claim has been stated. *Kehr Packages, Inc. v. Fidelcor, Inc.*, 926 F.2d 1406, 1409 (3d Cir. 1991); *Johnsrud v. Carter*, 620 F.2d 29, 32–33 (3d Cir. 1980); *Holocheck v. Luzerne County Head Start, Inc.*, 385 F. Supp. 2d 491, 495 (M.D. Pa. 2005). Although a plaintiff is entitled to notice and an opportunity to respond to a motion to dismiss, he has no obligation to do so—he may opt to stand on the pleadings rather than file an opposition. The Court must nevertheless examine the complaint and determine

whether it states a claim as a matter of law. *Stackhouse v. Mazurkiewicz*, 951 F.2d 29, 30 (3d Cir. 1991); *Anchorage Assocs. v. Virgin Islands Bd. of Tax Review*, 922 F2d 168, 174 (3d Cir. 1990). In deciding the motion, the Court may consider the facts alleged on the face of the complaint, as well as "documents incorporated into the complaint by reference, and matters of which a court may take judicial notice." *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 322 (2007).

## III. DISCUSSION

### A. The Plaintiff's Status as a *Pro Se* Litigant

As a preliminary matter, the Court notes that Ostrowski is proceeding *pro se* in this matter. Although a federal court is generally obligated to liberally construe the filings of *pro se* litigants, *see generally Mala v. Crown Bay Marina, Inc.*, 704 F.3d 239, 244–46 (3d Cir. 2013), neither Ostrowski's pleadings nor his motion papers are entitled to liberal construction in this case. As a trained attorney at law—albeit one suspended from the active practice of law—Ostrowski is not entitled to have his filings liberally construed. *See McNamara v. Brauchler*, 570 Fed. App'x 741, 743 & n.2 (10th Cir. 2014) (per curiam) ("[T]he purpose behind affording liberal construction to *pro se* filings—which is to assure adequate

review of claims brought by non-legally trained individuals—would not be furthered by construing [a disbarred attorney's] filings liberally."); *Feingold v. Unitrin Direct*, Civil Action No. 12-1250, 2012 WL 3866945, at *3 (E.D. Pa. Sept. 6, 2012) (disbarred attorney); *Allegrino v. Conway E & S, Inc.*, Civil Action No. 09-1507, 2010 WL 3943939, at *5 (W.D. Pa. Oct. 6, 2010) (disbarred attorney).

### B. Hatch Act Claim

In his second amended complaint, Ostrowski alleges that defendants DeAndrea and Yanuzzi "may have violated the Hatch Act, and possibl[y] other laws, in the 2015 Hazleton Mayoral election, when, at the behest of . . . Yanuzzi, [the incumbent mayor at the time,] DeAndrea, along with other City employees . . . , circulated nominating petitions for Yanuzzi." (Doc. 28, at 8–9).

The Hatch Act prohibits federal employees, and employees of state and local government agencies receiving federal funds, from engaging in partisan political activity. *See* 5 U.S.C. § 1502. Congress vested exclusive enforcement authority in the Merit Systems Protection Board. *See id.* § 1504. Thus, it is well established that the Hatch Act does not provide a private cause of action for relief. *See Hall v. Clinton*, 285 F.3d 74, 83 (D.C.

Cir. 2002); *NaPier v. Baldacci*, 451 F. Supp. 2d 256, 261 (D. Me. 2006);

*Abiff v. Virgin Islands Legislature*, 216 F. Supp. 2d 455, 460 n.7 (D.V.I.

2002); *Brooks v. Nacrelli*, 331 F. Supp. 1350, 1354 (E.D. Pa. 1971).

Accordingly, it is recommended that the plaintiff's Hatch Act claim

be dismissed for failure to state a claim pursuant to Rule 12(b)(6) of the

Federal Rules of Civil Procedure.

## C. Federal Civil Rights Claims

The second amended complaint asserts federal civil rights claims

pursuant to 42 U.S.C. § 1983. Section 1983 provides a private cause of

action with respect to the violation of federal constitutional rights. The

statute provides in pertinent part:

> Every person who, under color of any statute, ordinance,
> regulation, custom, or usage, of any State or Territory or
> the District of Columbia, subjects, or causes to be
> subjected, any citizen of the United States or any other
> person within the jurisdiction thereof to the deprivation
> of any rights, privileges, or immunities secured by the
> Constitution and laws, shall be liable to the party injured
> in an action at law, suit in equity, or other proper
> proceeding for redress . . . .

42 U.S.C. § 1983.

Section 1983 does not create substantive rights, but instead provides

remedies for rights established elsewhere. *City of Oklahoma City v. Tuttle*,

471 U.S. 808, 816 (1985). To establish a § 1983 claim, a plaintiff must establish that the defendant, acting under color of state law, deprived the plaintiff of a right secured by the United States Constitution. *Mark v. Borough of Hatboro*, 51 F.3d 1137, 1141 (3d Cir. 1995). To avoid dismissal for failure to state a claim, a civil rights complaint must state the conduct, time, place, and persons responsible for the alleged civil rights violations. *Evancho v. Fisher*, 423 F.3d 347, 353 (3d Cir. 2005).

Here, Ostrowski has alleged that DeAndrea's statements at the press conference were made in retaliation for the filing of his original complaint in this action, an exercise of his First Amendment right to petition the courts for redress, and for his decision to run against the incumbent U.S. Representative for the Eleventh Congressional District, an exercise of his First Amendment right to run for public office. Alternatively, Ostrowski has alleged that these statements deprived him of a protected right or interest without due process of law, in violation of the Fourteenth Amendment. Ostrowski has further alleged, in cursory fashion, that DeAndrea conspired with Officer Doe (to the extent he is not himself Officer Doe), Yanuzzi, and other unnamed individuals in the alleged unlawful detention of an unnamed campaign volunteer and the alleged

confiscation of nominating petitions with 67 signatures in support of Ostrowski's placement on the election ballot, which allegedly constituted unlawful interference with Ostrowski's right to run for public office under the First Amendment, an unreasonable seizure of his nominating petitions under the Fourth Amendment, and a deprivation of property without due process under the Fourteenth Amendment; or, in the alternative, Ostrowski alleges that DeAndrea may himself be "Officer Doe" and thus personally responsible for the allegedly unconstitutional seizure of the petitions. Finally, Ostrowski alleges that the foregoing allegedly unconstitutional conduct was done pursuant to a policy or custom of the City of Hazleton, and thus the municipality itself should be held liable for the conduct of its employees, the individual defendants.

Ostrowski seeks an unspecified award of damages, including punitive damages. He also seeks equitable relief in the form of an order directing the defendants to return to him the nominating petitions allegedly seized from Jane Doe.

### 1. Retaliation Claim

Ostrowski claims that DeAndrea's statements at the press conference were made in retaliation for the filing of this litigation and for his decision

to run against an incumbent Congressman who was allegedly DeAndrea's personal friend. He further claims that Yanuzzi made comments at that press conference as well, expressing support for DeAndrea's statements. The defendants have moved to dismiss this claim on the ground that the amended complaint has failed to allege retaliatory conduct sufficient to deter a person of ordinary firmness from exercising his constitutional rights.

"[T]o plead a retaliation claim under the First Amendment, a plaintiff must allege: (1) constitutionally protected conduct, (2) retaliatory action sufficient to deter a person of ordinary firmness from exercising his constitutional rights, and (3) a causal link between the constitutionally protected conduct and the retaliatory action." *Thomas v. Independence Twp.*, 463 F.3d 285, 296 (3d Cir. 2006) (retaliation for filing a lawsuit); *see also Koren v. Noonan*, 586 Fed. App'x 885, 887–88 (3d Cir. 2014) (per curiam) (retaliation for running for public office). At issue here is the second element, which requires Ostrowski to plausibly allege retaliatory action sufficient to deter a person of ordinary firmness from exercising his constitutional rights. This inquiry is a "'fact intensive'" one, "'focusing on the status of the speaker, the status of the retaliator, the relationship

between the speaker and the retaliator, *and the nature of the retaliatory acts*[,]' which must 'be more than *de minimis* or trivial.'" *Koren*, 586 Fed. App'x at 888 (quoting *Brennan v. Norton*, 350 F.3d 399, 419 (3d Cir. 2003)) (emphasis and alteration in original).

Here, Ostrowski was a candidate for public office who had filed a federal lawsuit accusing an unidentified Hazleton police officer of unlawfully detaining one of his campaign volunteers and seizing nominating petitions containing 67 signatures. DeAndrea was chief of the police department accused of this unlawful conduct, and Yanuzzi was mayor of the City of Hazleton. Ostrowski claims that DeAndrea retaliated against him by holding a "contrived press conference" and characterizing the allegations of the original complaint filed by Ostrowski in this action as "fabricated . . . for political purposes," and that Yanuzzi participated in this conduct by "comment[ing] similarly, in support of DeAndrea." (Doc. 28, at 2, 3, 10). He claims that DeAndrea's statements at the press conference characterizing Ostrowski's allegations as "fabricated" were themselves false and defamatory. (*Id.* at 11, 15).

As previously noted, conduct is retaliatory if it is "sufficient to deter a person of ordinary firmness from exercising his constitutional rights."

*Thomas*, 463 F.3d at 296; *Koren*, 586 Fed. App'x at 887. As the Third Circuit has previously observed in a case involving similar circumstances, "a plaintiff must plead more than mere 'criticism, false accusations, or verbal reprimands.'" *Koren*, 586 Fed. App'x at 888 (quoting *Brennan*, 350 F.3d at 419). Indeed, "in the political arena, courts have consistently rejected First Amendment retaliation claims based upon assertions of purportedly false reports or criticism." *Id.* Thus, in the context of a political campaign, the question "is not whether [the defendant's] remarks were defamatory—it is whether they would have deterred 'a person of ordinary firmness' from pursuing a similar run for public office." *Koren*, 586 Fed. App'x at 888 (quoting *Thomas*, 463 F.3d at 296).

Here, the defendants' allegedly retaliatory behavior was to go to the press and publicly disagree with a political candidate's allegations about police misconduct, characterizing them as "fabricated . . . for political purposes." While these statements may have diminished Ostrowski's reputation to some degree, such reputational damage is insufficient to dissuade a person of ordinary firmness from seeking political office. *See Koren*, 586 Fed. App'x at 888 (alleged defamatory comments about candidate's past employment performance); *Bradshaw v. Twp. of*

*Middleton*, 296 F. Supp. 2d 526, 542 (D.N.J. 2003) (defendant's statement to newspaper that plaintiff's comment in another newspaper was "a lie"); *Smith v. Cent. Dauphin Sch. Dist.*, 511 F. Supp. 2d 460, 475 (M.D. Pa. 2007) (defendant's comments to others that plaintiff was lying). *See generally Zerka v. Amicone*, 634 F.3d 642, 646 (2d Cir. 2011) ("Retaliatory insults or accusations may wound one's soul, but by themselves they fail to cross the threshold of measurable harm required to move government response to public complaint from the forum of free speech into federal court.").

Accordingly, it is recommended that Ostrowski's retaliation claim be dismissed for failure to state a claim pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure.

### 2. Due Process Claim

Ostrowski claims that the defendants' statements at the press conference violated his procedural and substantive due process rights under the Fourteenth Amendment by interfering with his First Amendment right to run for public office. The defendants have moved to dismiss this claim on the grounds that Ostrowski has failed to allege a protected liberty or property interest, and that Ostrowski has failed to

allege conduct that "shocks the conscience."

The Due Process Clause of the Fourteenth Amendment provides that no state shall "deprive any person of life, liberty, or property, without due process of law." U.S. Const. Amend. XIV § 1. As the Supreme Court has observed, "the core of the concept" of due process is "protection against arbitrary action." *County of Sacramento v. Lewis*, 523 U.S. 833, 845 (1998); *see also Chambers ex rel. Chambers v. Sch. Dist. of Philadelphia Bd. of Educ.*, 587 F.3d 176, 190 (3d Cir. 2009); *United Artists Theatre Circuit, Inc. v. Twp. of Warrington*, 316 F.3d 392, 399 (3d Cir. 2003). "The Due Process Clause's primary protection against the arbitrary exercise of power by government officials is its requirement of fair procedures—that is, of procedural due process." *Nicholas v. Pa. State Univ.*, 227 F.3d 133, 139 (3d Cir. 2000). Nevertheless, "a non-legislative government deprivation that comports with procedural due process may still give rise to a substantive due process claim upon allegations that the government deliberately and arbitrarily abused its power." *Id.* (internal quotation marks omitted). But "only the most egregious official conduct can be said to be arbitrary in the constitutional sense." *Lewis*, 523 U.S. at 846; *Chambers*, 587 F.3d at 190; *United Artists*, 316 F.3d at 399.

"[T]o prevail on a substantive due process claim, 'a plaintiff must prove the particular interest at issue is protected by the substantive due process clause and the government's deprivation of that protected interest shocks the conscience.'" *Chambers*, 587 F.3d at 190 (quoting *Chainey v. Street*, 523 F.3d 200, 219 (3d Cir. 2008)). Whether the right or interest asserted is entitled to substantive due process protection depends on whether it is considered "fundamental." *Nicholas*, 227 F.3d at 140–41; *Snyder v. Bender*, No. 1:09-CV-0927, 2010 WL 2103640, at *6 (M.D. Pa. May 25, 2010); *Tobin v. Badamo*, No. 3:00CV783, 2000 WL 1880262, at *4 (M.D. Pa. Dec. 20, 2000) ("Federal substantive due process rights are created by the U.S. Constitution and federal substantive due process protection is accorded only to fundamental interests derived from the federal Constitution."). "[T]he right to run for public office, unlike the right to vote, is not a fundamental right" protected by substantive due process. *Snyder*, 2010 WL 2103640, at *6 (quoting *Stiles v. Blunt*, 912 F.2d 260, 265 (8th Cir. 1990) (citing *Bullock v. Carter*, 405 U.S. 134, 142–43 (1972))). Mere defamation or harm to reputation is likewise outside the scope of substantive due process protection. *See Paul v. Davis*, 424 U.S. 693, 713 (1976); *Boyanowski v. Capital Area Intermediate Unit*, 215 F.3d 396, 399–

404 (3d Cir. 2000); *Austin v. Neal*, 933 F. Supp. 444, 455–56 (E.D. Pa. 1996); *Tobin*, 2000 WL 1880262, at *4 ("[T]he law does not recognize a cause of action for substantive due process based on defamation or harm to reputation.").

With respect to procedural due process, the Fourteenth Amendment only requires due process if a state interferes with a protected liberty or property interest. *Ky. Dep't of Corr. v. Thompson*, 490 U.S. 454, 459–60 (1993). Here, Ostrowski alleges that, in convening the press conference and stating that the allegations of his original complaint were "fabricated . . . for political purposes," the defendants sought to "smear" Ostrowski and to "hurt and harm his chances to win the election." Ostrowski does not allege that he was prevented from accessing the ballot. Indeed, the amended complaint explicitly acknowledges that he met the numerical signature requirements despite the alleged loss of 67 signatures, and the Court further notes that Ostrowski's campaign persisted and he stood against the incumbent in the general election on November 4, 2014.[3] As such, taking the facts alleged as true and viewing

---

[3] The official election results are available on the Pennsylvania Department of State's website. Pa. Dep't of State, 2014 General Election –

*(continued on next page)*

them in the light most favorable to the plaintiff, the only actual injury alleged in the amended complaint as a result of the allegedly defamatory statements is an injury to Ostrowski's reputation.

But "injury to reputation by itself [i]s not a 'liberty' interest protected under the Fourteenth Amendment." *Siegert v. Gilley*, 500 U.S. 226, 233 (1991); *see also Snyder v. Bender*, No. 1:09-CV-0927, 2010 WL 2103640, at *5–*6 (M.D. Pa. May 25, 2010) (finding alleged injury to a political candidate's reputation did not demonstrate deprivation of a protected liberty or property interest). "[S]o long as . . . damage flows from injury caused by the defendant to a plaintiff's reputation, it may be recoverable under state tort law but it is not recoverable in a [federal civil rights] action." *Siegert*, 500 U.S. at 234.

Here, Ostrowski has failed to allege the deprivation of a fundamental right or interest protected by substantive due process or a liberty or property interest protected by procedural due process. Accordingly, it is

---

Official Returns – Representative in Congress – 11th Congressional District (Nov. 4, 2014), *available at* www.electionreturns.pa.gov (last visited on Aug. 8, 2017). These state election records are public records of which this Court may properly take judicial notice in considering dismissal of an action for failure to state a claim. *See* Fed. R. Evid. 201; *Tellabs*, 551 U.S. at 322; *Dudum v. Arntz*, 640 F.3d 1098, 1102 n.6 (9th Cir. 2011).

recommended that Ostrowski's due process claim be dismissed for failure to state a claim pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure.

### 3. *Seizure of Nominating Petitions*

Ostrowski claims that an unidentified Hazleton police officer accosted one of his campaign volunteers on the streets of Hazleton while she was collecting signatures on nominating petitions for Ostrowski's placement on an election ballot. Ostrowski alleges that the unidentified officer unlawfully detained the volunteer and seized three pages of nominating petitions containing 67 signatures from her. The officer then released the volunteer without returning the petitions to her. Ostrowski claims that this conduct by an unidentified Hazleton police officer violated his First, Fourth, and Fourteenth Amendment rights. He has also alleged, on information and belief, that defendant DeAndrea "was, or may be, the Officer Doe who seized the petitions." In the alternative, he seeks to hold defendants DeAndrea and Yanuzzi personally liable for Officer Doe's alleged conduct as co-conspirators.

The pleading of facts upon information and belief is appropriate only where the facts required to be pled are uniquely in the control of the

defendant. *See Little v. Borough of Greenville*, Civil Action No. 13-1268, 2013 WL 6835082, at *4 (W.D. Pa. Dec. 26, 2013); *Wright v. Lehigh Valley Hosp. & Health Network*, Civ. A. No. 10-431, 2011 WL 2550361, at *3 (E.D. Pa. June 23, 2011) (citing *Brinkmeier v. Graco Children's Prods. Inc.*, Civ. A. 09-262, 2011 WL 772894, at *6 (D. Del. March 7, 2011)). This allegation concerns information in the hands of Ostrowski's own campaign volunteer—who was, of course, herself present at the alleged event itself—and unspecified "others," not information uniquely in the control of the defendants. Moreover, the second amended complaint has alleged that DeAndrea "was, *or may be*, the Officer Doe who seized the petitions." Such equivocal pleading fails "to provide fair notice to defendants of the actual grounds of the claim against them," *Twombly*, 550 U.S. at 582, and thus lacks the facial plausibility necessary to state a claim upon which relief can be granted. *See Ayon v. Kent Denver Sch.*, No. 12-CV-2546-WJM-CBS, 2013 WL 1786978, at *6 (D. Colo. Apr. 26, 2013); *Pa. Emps. Benefit Tr. Fund v. Astrazeneca Pharmaceuticals LP*, 2009 WL 2231686 at *3 (M.D.Fla.2009).

To the extent that Ostrowski seeks to hold DeAndrea and Yanuzzi indirectly liable for the conduct of Officer Doe, we note that "[c]ivil rights

claims cannot be premised on a theory of *respondeat superior*. Rather, each named defendant must be shown, via the complaint's allegations, to have been personally involved in the events or occurrences which underlie a claim." *Millbrook v. United States*, 8 F. Supp. 3d 601, 613 (M.D. Pa. 2014) (citation omitted). As previously explained by the Third Circuit:

> A defendant in a civil rights action must have personal involvement in the alleged wrongs . . . . [P]ersonal involvement can be shown through allegations of personal direction or of actual knowledge and acquiescence. Allegations of participation or actual knowledge and acquiescence, however, must be made with appropriate particularity.

*Rode v. Dellarciprete*, 845 F.2d 1195, 1207 (3d Cir. 1988).

Beyond the facially implausible allegation that DeAndrea himself is Officer Doe, the only allegations in the second amended complaint that suggest any role by DeAndrea or Yanuzzi in this initial incident are conclusory statements that these defendants participated in a "civil conspiracy," and that the unidentified officer's allegedly unlawful conduct was part of a conspiracy among the defendants to "intentionally impede and harm [Ostrowski] in the form of supportive efforts for the incumbent Congressman." These are not well-pleaded allegations of fact, but rather unsupported conclusions of law. *See Loftus v. Se. Pa. Transp. Auth.*, 843 F.

Supp. 981, 986 n.8 (E.D. Pa. 1994) ("A general allegation of conspiracy without a statement of the facts is an allegation of a legal conclusion and insufficient itself to constitute a cause of action.") (quoting *Black & Yates, Inc. v. Mahogany Ass'n, Inc.*, 129 F.2d 227, 231 (3d Cir. 1941)). To properly plead a conspiracy, a plaintiff must present "'enough factual matter (taken as true) to suggest that an agreement was made,' in other words, 'plausible grounds to infer an agreement.'" *Great W. Mining & Mineral Co. v. Fox Rothschild LLP*, 615 F.3d 159, 178 (3d Cir. 2010) (quoting *Twombly*, 550 U.S. at 556); *Rittenhouse Entm't, Inc. v. City of Wilkes-Barre*, 861 F. Supp. 2d 470, 481 (M.D. Pa. 2012). Specifically, the plaintiff "must set forth allegations that address the period of the conspiracy, the object of the conspiracy, and the certain actions of the alleged conspirators taken to achieve that purpose." *Fox Rothschild*, 615 F.3d at 179; *Rittenhouse*, 861 F. Supp. 2d at 482.

The bald assertion here that the defendants acted in concert is a legal conclusion not entitled to the assumption of truth, and therefore must be disregarded in the absence of well-pleaded factual allegations to support that conclusion. *See Fox Rothschild*, 615 F.3d at 178; *Rittenhouse*, 861 F. Sup. 2d at 482. The specific events pleaded in the second amended

complaint—the detention of a campaign volunteer and seizure of the nominating petitions by an unidentified police officer on March 4, 2014, the allegedly defamatory statements by DeAndrea at a press conference on March 17, 2014, and the allegedly supportive comments by Yanuzzi at that same press conference—appear to have been "undertaken independently of each other . . . and do not suggest either an agreement, *inter se*, or the type of 'communication, consultation, cooperation, or command from which such an agreement can be inferred.'" *See Loftus*, 843 F. Supp. at 987. "Parallel but independent action by separate actors does not import conspiracy." *Id.*

Accordingly, it is recommended that Ostrowski's claims with respect to the allegedly unlawful seizure of nominating petitions from a campaign volunteer be dismissed for failure to state a claim pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure.

### 4. *Municipal Liability Claim*

Ostrowski has also sought to hold the City of Hazleton liable for the conduct of its mayor, police chief, and unspecified other employees.

"On its face, § 1983 makes liable 'every person' who deprives another of civil rights under color of state law." *Burns v. Reid*, 500 U.S. 478, 497 (1991) (Scalia, J., concurring in part and dissenting in part). In *Monell v.*

*Department of Social Services*, 436 U.S. 658 (1978), the Supreme Court of the United States established that municipalities and other local governmental units are included among those "persons" subject to liability under § 1983. *Id.* at 690. The City of Hazleton is such a municipality subject to liability as a "person" under § 1983. *See Dix v. City of Philadelphia*, Civil Action No. 15-532, 2015 WL 4624248, at *8 (E.D. Pa. Aug. 3, 2015); *Postie v. Frederick*, Civil Action No. 3:14-00317, 2015 WL 1219263, at *4 (M.D. Pa. Mar. 17, 2015); *Johnson v. City of Erie*, 834 F. Supp. 873, 878–79 (W.D. Pa. 1993) ("*Monell* clearly holds that a local government is a person subject to suit . . . .").

But "[u]nder *Monell*, a municipality cannot be subjected to liability solely because injuries were inflicted by its agents or employees." *Jiminez v. All American Rathskeller, Inc.*, 503 F.3d 247, 249 (3d Cir. 2007). Rather, a municipality can be liable under § 1983 only if the conduct alleged to be unconstitutional either "implements or executes a policy statement, ordinance, regulation, or decision officially adopted and promulgated by that body's officers" or is "visited pursuant to governmental 'custom' even though such a custom has not received formal approval through the body's official decision-making channels." *Monell*, 436 U.S. at 690–91. "[I]t is

when execution of a government's policy or custom, whether made by its lawmakers or by those whose edicts or acts may fairly be said to represent official policy, inflicts the injury that the government as an entity is responsible under § 1983." *Jiminez*, 503 F.3d at 249. "A plaintiff must identify the challenged policy, attribute it to the [municipality] itself, and show a causal link between execution of the policy and the injury suffered." *Losch v. Borough of Parkesburg*, 736 F.2d 903, 910 (3d Cir. 1984).

Here, Ostrowski has failed to identify any affirmative policy or custom adopted or promulgated by the City of Hazleton. The second amended complaint merely states that all of the allegedly wrongful conduct was "undertaken pursuant to, in furtherance of, and/or were otherwise guided by the unlawful custom, policy, pattern, and practice of the City of Hazleton with regard to the quelling of political dissent, and treatment of matters regarding minorities, and the minority community." Such conclusory allegations are insufficient to state a claim for § 1983 liability under *Monell*. *See Groman v. Twp. of Manalapan*, 47 F.3d 628, 637 (3d Cir. 1995) (holding that "vague assertions" of a policy or custom, without more, are not sufficient to state a claim under *Monell*).

Moreover, "for there to be municipal liability, there . . . must be a violation of the plaintiff's constitutional rights." *Brown v. Pa. Dep't of Health Emergency Med. Servs. Training Inst.*, 318 F.3d 473, 482 (3d Cir. 2003). Because Ostrowski has failed to state a federal civil rights claim against the individual defendants, DeAndrea and Yanuzzi, he simply cannot, as a matter of law, establish a *Monell* municipal liability claim against the municipal defendant, the City of Hazleton. *See id.*; *Startzell v. City of Philadelphia, Pa.*, 533 F.3d 183, 204 (3d Cir. 2008).

Accordingly, it is recommended that Ostrowski's § 1983 municipal liability claim against the City of Hazleton be dismissed for failure to state a claim pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure.

### D. State-Law Defamation Claim

Ostrowski has asserted a supplemental state-law defamation claim against DeAndrea based on his statements at the press conference. The defendants have moved to dismiss this claim on the ground that, under state law, DeAndrea is entitled to high public official immunity in his role as a municipal police chief.[4]

---

[4] DeAndrea cites a Commonwealth Court decision, *Herdelin v. Chitwood*, No. 519 C.D. 2012, 2012 WL 8678110 (Pa. Commw. Ct. 2012), in
*(continued on next page)*

"Pennsylvania exempts a high public official from all civil suits for damages arising out of false defamatory statements and even from statements or actions motivated by malice, provided the statements are made or the actions are taken in the course of the official's duties or powers." *Smith v. Borough of Dunmore*, 633 F.3d 176, 181 (3d Cir. 2011).

> Whether a public official is entitled to the immunity depends on the nature of his duties, the importance of his office, and particularly whether or not he has policy-making functions. If an official is entitled to the immunity, the court considers the formality of the forum in which the alleged acts occurred, and the relationship of the legitimate subject of governmental concern to the person seeking damages to determine whether they were within the scope of defendants' official duties.

*Mariano v. Borough of Dickson City*, 40 F. Supp. 3d 411, 420 (M.D. Pa. 2014) (internal quotation marks omitted). Although it is clear that certain public officials, such as borough mayors and borough council members, are "high public officials" as a matter of law, "[t]he status of a police chief for

---

support of the proposition that, as chief of police, he is entitled to high public official immunity as a matter of law. But *Herdelin* was an appeal from a trial court decision on summary judgment, based on evidence rather than on the face of the complaint. *See id.* at *1. Moreover, the appeal focused on whether the allegedly defamatory statements at issue in that case were made outside the scope of the police chief defendant's official duties; the plaintiff did not challenge the trial court's summary judgment determination that the police chief defendant was a high public official. *See id.* at *2 & n.5.

high public official immunity purposes is less clear. . . . Discovery is necessary to make this case-specific determination . . . ." *Mariano v. Borough of Dickson City*, Civil Action No. 3:13-0097, 2013 WL 6234622, at *8 (M.D. Pa. Dec. 2, 2013); *see also Mariano*, 40 F. Supp. 3d at 420 (finding on summary judgment, after discovery, that a police chief *was not* entitled to high public official immunity).

Nevertheless, where a district court has dismissed all claims over which it had original jurisdiction, the Court may decline to exercise supplemental jurisdiction over state law claims. 28 U.S.C. § 1367(c)(3). Whether the Court will exercise supplemental jurisdiction is within its discretion. *Kach v. Hose*, 589 F.3d 626, 650 (3d Cir. 2009). That decision should be based on "the values of judicial economy, convenience, fairness, and comity." *Carnegie-Mellon Univ. v. Cohill*, 484 U.S. 343, 350 (1988). Ordinarily, when all federal law claims have been dismissed and only state law claims remain, the balance of these factors indicates that these remaining claims properly belong in state court. *Cohill*, 484 U.S. at 350. Finding nothing in the record to distinguish this case from the ordinary one, the balance of factors in this case "point[s] toward declining to exercise jurisdiction over the remaining state law claims." *See Cohill*, 484

U.S. at 350 n.7. Therefore, it is recommended that Ostrowski's state-law defamation claim be dismissed without prejudice pursuant to 28 U.S.C. § 1367(c)(3).

**E. Leave to Amend**

The Third Circuit has instructed that if a civil rights complaint is vulnerable to dismissal for failure to state a claim, the district court must permit a curative amendment, unless an amendment would be inequitable or futile. *Grayson v. Mayview State Hosp.*, 293 F.3d 103, 108 (3d Cir. 2002). This instruction applies equally to *pro se* plaintiffs and those represented by counsel. *Alston v. Parker*, 363 F.3d 229, 235 (3d Cir. 2004). Given Ostrowski's previous unsuccessful attempt to amend his complaint to state a claim upon which relief can be granted, it is clear that further amendment would be futile. It is therefore recommended that the second amended complaint be dismissed *without* leave to amend.

IV.  **RECOMMENDATION**

For the foregoing reasons, it is recommended that:

1.    The defendant's motion to dismiss (Doc. 30) be **GRANTED in part and DENIED in part**;

2.    All of the plaintiff's Hatch Act and § 1983 civil rights claims be

**DISMISSED WITH PREJUDICE** for failure to state a claim pursuant to Fed. R. Civ. P. 12(b)(6);

    3.    The plaintiff's state-law defamation claim be **DISMISSED WITHOUT PREJUDICE** pursuant to 28 U.S.C. § 1367(c)(3); and

    4.    The Clerk be directed to **CLOSE** this case.

Dated: August 10, 2017          ***s/Joseph F. Saporito, Jr.***
                                      JOSEPH F. SAPORITO, JR.
                                      United States Magistrate Judge

# UNITED STATES DISTRICT COURT
# MIDDLE DISTRICT OF PENNSYLVANIA

ANDREW OSTROWSKI,

    Plaintiff,

    v.

FRANK D'ANDREA, et al.,

    Defendants.

CIVIL ACTION NO. 3:14-cv-00429

(CAPUTO, J.)
(SAPORITO, M.J.)

## NOTICE

NOTICE IS HEREBY GIVEN that the undersigned has entered the foregoing Report and Recommendation dated August 10, 2017. Any party may obtain a review of the Report and Recommendation pursuant to Local Rule 72.3, which provides:

> Any party may object to a magistrate judge's proposed findings, recommendations or report addressing a motion or matter described in 28 U.S.C. § 636(b)(1)(B) or making a recommendation for the disposition of a prisoner case or a habeas corpus petition within fourteen (14) days after being served with a copy thereof. Such party shall file with the clerk of court, and serve on the magistrate judge and all parties, written objections which shall specifically identify the portions of the proposed findings, recommendations or report to which objection is made and the basis for such objections. The briefing requirements set forth in Local Rule 72.2 shall apply. A judge shall make a de novo determination of those portions of the report or specified proposed findings or recommendations to which objection is made and may

accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge. The judge, however, need conduct a new hearing only in his or her discretion or where required by law, and may consider the record developed before the magistrate judge, making his or her own determination on the basis of that record. The judge may also receive further evidence, recall witnesses or recommit the matter to the magistrate judge with instructions.

Failure to file timely objections to the foregoing Report and Recommendation may constitute a waiver of any appellate rights.

Dated: August 10, 2017              **_s/ Joseph F. Saporito, Jr._**
                                    JOSEPH F. SAPORITO, JR.
                                    United States Magistrate Judge